# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 06, 2026

Alexandria Lee Overcash
ATTORNEY GENERAL'S OFFICE
Suite 200
815 Olive Street
Saint Louis, MO  63101

RE:  25-1270  Kristine Williams v. MO Department of Corrections, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

DNS

Enclosure(s)

cc:     Clerk, U.S. District Court, Eastern District of Missouri
        Adam P. Pihana
        Timothy A. Ricker
        J. Patrick Sullivan
        Jessica L. Ward

District Court/Agency Case Number(s):   1:24-cv-00054-ACL

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 06, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  25-1270  Kristine Williams v. MO Department of Corrections, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was Samuel Charles Freedlund, former AAG, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Reed Dempsey, former AAG, of Jefferson City, MO.

Counsel who presented argument on behalf of the appellee and appeared on the brief was Adam P. Pihana, of Springfield, MO.

The judge who heard the case in the district court was Honorable Abbie Crites-Leoni.

If you have any questions concerning this case, please call this office.

Susan E. Bindler
Clerk of Court

DNS

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  1:24-cv-00054-ACL

# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1270

_____

Kristine Williams, individually and as next Friend for J.R.M., R.A.M., and Z.K.M.

*Plaintiff - Appellee*

v.

Missouri Department of Corrections

*Defendant - Appellant*

Bill Stange

*Defendant*

Billy Loflin; Pierce Yount; Stephanie Noisworthy

*Defendants - Appellants*

Christy Williams; William L. Johnson, MD, DO; Cynthia Reese, LPC; Centurion of Missouri, LLC

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 13, 2026
Filed: August 6, 2026

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

————————

SHEPHERD, Circuit Judge.

After Kristine Williams's son, Austen May, died by suicide while in custody in a Missouri Department of Corrections (MODOC) facility, she filed this action against MODOC and various MODOC employees, alleging constitutional and state law claims. As relevant to this appeal, defendants MODOC, Billy Loflin, Pierce Yount, and Stephanie Noisworthy filed motions to dismiss, each asserting entitlement to immunity. The district court denied each defendant immunity, concluding that MODOC was not entitled to sovereign immunity, that Loflin, Yount, and Noisworthy were not entitled to qualified immunity on Williams's constitutional deliberate indifference claim, and that Loflin, Yount, and Noisworthy were not entitled official immunity on Williams's state law wrongful death claim. On appeal, these defendants assert that the district court erroneously denied them immunity. Having jurisdiction under 28 U.S.C. § 1292, we reverse and remand.

I.

This case arises from the tragic death of Austen May while in MODOC custody at the Southeast Correctional Center (SECC) in July 2021. Prior to his death by suicide, May previously attempted suicide while incarcerated; in August 2020, while in MODOC custody at another facility, May was found by a cellmate hanging by the neck with a sheet tied to a sprinkler head. After this attempt, May was evaluated by MODOC mental health professionals, who diagnosed him with adjustment disorder, depression, and anxiety. May also was prescribed medication, referred for therapy, and, after his transfer to the SECC, he remained under the care of SECC medical professionals, including defendants William Johnson, a licensed psychiatrist, and Cynthia Reese, a licensed professional counselor. Over the course of the next several months, May met with Johnson, Reese, and other mental health professionals, each time complaining of anxiety and depression. May also reported

-2-

having auditory hallucinations and experiencing difficulty sleeping and a reduced appetite. During this timeframe, Dr. Johnson diagnosed May with adjustment disorder with anxiety and cannabis use disorder, and he periodically adjusted May's prescription medications.

On July 29, 2021, defendant Bill Stange, the SECC warden, signed an order placing May in administrative segregation pending the outcome of a disciplinary hearing scheduled for August 6, 2021. Defendant Christy Williams, a licensed practical nurse, performed a medical assessment on May prior to his placement in segregation. In her report, Williams noted that May had existing medical or mental health conditions and that he was withdrawn and angry.

On July 30, 2021, defendants Billy Loflin, Pierce Yount, and Stephanie Noisworthy were working in the unit where May was in segregation. Pursuant to departmental policy, correctional officers Loflin and Yount were required to make "irregular, but periodic checks, with no fewer than 1 check in a 30 minute window" of the wing. Further, departmental policy required Noisworthy, who was a sergeant, to "[s]upervise the housing unit officers assigned to the housing unit [to] ensure that irregular, but periodic checks, with no fewer than 1 check in a 30 minute window" were made. Despite these policies, an over two-hour period of time elapsed in which no checks of May's cell occurred. At some point during this time frame, May placed a paper over his cell door window, obscuring the view inside. When Loflin later approached May's cell with his dinner tray, he observed the obscured window. May's cell was opened, and he was discovered hanging from an air vent by a bed sheet tied around his neck. May was shortly thereafter pronounced dead. A later report from a MODOC investigation revealed that 2 hours and 48 minutes elapsed between the last cell check or staff interaction with May and the time that he was discovered hanging from the air vent.

Kristine Williams filed this action, individually and as next friend for May's minor children, asserting various counts against MODOC and its employees: two counts of wrongful death under Missouri law against MODOC; one count of failure

-3-

to train and supervise under 42 U.S.C. § 1983 against Stange; one count of deliberate indifference to a risk of suicide against Loflin, Yount, and Noisworthy pursuant to § 1983; one count of wrongful death under Missouri law against Loflin, Yount, and Noisworthy; and three counts against defendants Williams, Johnson, and Reese, along with their employer, Centurion of Missouri, LLC for deliberate indifference pursuant to § 1983 and medical negligence and failure to render health care services under Missouri law. As relevant to this appeal, MODOC filed a motion to dismiss the two counts against it, asserting that it is entitled to sovereign immunity. Meanwhile, Loflin, Yount, and Noisworthy filed a motion to dismiss the deliberate indifference claim, asserting that they are entitled to qualified immunity. Loflin, Yount, and Noisworthy also moved to dismiss the count alleging wrongful death, asserting that they are entitled to official immunity or, in the alternative, that the public duty doctrine bars Williams's claim.

The district court denied the motions to dismiss. As to MODOC's motion, the district court determined that it was not entitled to sovereign immunity because Williams plausibly alleged that the dangerous condition exception—which results in a waiver of sovereign immunity where there is a known and dangerous condition that creates an unreasonable foreseeable risk of harm and that harm later occurs—applied and barred immunity. The district court concluded that Williams plausibly alleged that a dangerous condition existed in a defective video monitoring system and/or an obstruction of the viewing window into May's cell; that May's death resulted from the dangerous condition, particularly because May previously attempted suicide while in custody; and that the dangerous condition was foreseeable because May's suicide was a foreseeable and natural product of an obstructed cell window and deficient security cameras. In denying MODOC's motion, the district court noted that the cases MODOC cited in support of its motion were decided at summary judgment, which provides a more substantive consideration of the dangerous condition exception than in a motion to dismiss.

As to Loflin, Yount, and Noisworthy's motion to dismiss the deliberate indifference count based on qualified immunity, the district court determined that

-4-

Williams plausibly alleged a serious medical need—May's mental state—from which Loflin, Yount, and Noisworthy knew or could have inferred that May was a suicide risk. The district court also concluded that Williams plausibly alleged that these defendants were deliberately indifferent to May's serious medical need because, despite May's risk of suicide, they left him alone and unmonitored for roughly three hours. Having concluded that Williams plausibly alleged a constitutional violation, the district court then concluded that that constitutional right was clearly established because "[c]ase law firmly establishes that a pretrial detainee has the right to be free from deliberate indifference to his substantial suicide risk and from deliberately indifferent denials of emergency medical care."

Finally, the district court denied Loflin, Yount, and Noisworthy's motion to dismiss the wrongful death count based on official immunity or the public duty doctrine. The district court determined that Loflin, Yount, and Noisworthy were not entitled to official immunity—which protects public officials from liability for acts arising from discretionary acts performed in the exercise of their public duties—because Williams sufficiently alleged that these defendants were acting in ministerial, not discretionary, capacities when they failed to conduct the prescribed checks every thirty minutes. The district court also noted that, due to the fact-intensive nature of official immunity, "the determination of this issue cannot be made at this stage in the proceedings." The district court similarly rejected Loflin, Yount, and Noisworthy's argument that the public duty doctrine—which dictates that a public employee is not liable to an individual for injuries he sustains resulting from a breach of a duty that the employee owes to the general public—barred the claim. The district court concluded that Williams plausibly alleged that Loflin, Yount, and Noisworthy breached their duty to prevent May's suicide by failing to monitor him in light of his history of suicidal behavior. The district court focused, in part, on what it believed to be the premature consideration of the public duty doctrine on a motion to dismiss. This interlocutory appeal follows, with MODOC, Loflin, Yount, and Noisworthy challenging the district court's denial of their motions to dismiss based on their claimed entitlement to immunity.

-5-

II.

On appeal, MODOC asserts that the district court erred in denying it sovereign immunity on Williams's state-law wrongful death claims.  MODOC asserts that the district court misapplied the dangerous condition exception by extending it to a failure to supervise claim, that Williams failed to plausibly allege that a dangerous condition caused May's death, and that Williams failed to plausibly allege that MODOC or its employees created the dangerous condition or had actual or constructive knowledge of the dangerous condition.  "This court reviews de novo questions of sovereign immunity."  Church v. Missouri, 913 F.3d 736, 742 (8th Cir. 2019) (citation omitted).

Under Missouri law, "[s]overeign immunity is a common law judicial doctrine barring suit against a government or public entity," Allen v. Missouri 32nd Judicial Circuit, 638 S.W.3d 880, 886 (Mo. 2022), meaning that "public entities are generally immune from suits for their negligent acts," Gilmore v. Missouri Department of Social Services, Children's Division, 658 S.W.3d 146, 152 (Mo. Ct. App. 2022). However, sovereign immunity may be waived.  Allen, 638 S.W.3d at 886.  Pursuant to Mo. Rev. Stat. § 537.600.1(2), the state and its subdivisions waive sovereign immunity for "[i]njuries caused by the condition of a public entity's property," known as the dangerous condition exception.  Application of the statutory waiver in § 537.600.1(1) requires a plaintiff to show four elements:

> (1) that the property was in dangerous condition at the time of the injury,
>
> (2) that the injury directly resulted from the dangerous condition—that is, that the dangerous condition was the proximate cause of the injury,
>
> (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury that was incurred; and

-6-

(4) that a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Hensley v. Jackson Cnty., 227 S.W.3d 491, 496 (Mo. 2007) (citation omitted). "For a dangerous condition waiver of sovereign immunity to apply, the dangerous condition must 'describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to property of the public entity.'" State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell, 91 S.W.3d 612, 616 (Mo. 2002) (citation omitted). In her complaint, Williams alleges that the SECC was in a dangerous condition at the time of May's suicide because MODOC

> maintained a defective video monitoring system on its property that it knew or should have known failed to appropriately display areas wherein prisoners needed to be monitored, maintained a defective mechanism for monitoring at-risk detainees in their cells, maintained an obstruction to the viewing window to Decedent's cell (i.e., the paper obscuring the viewing window), was inadequately staffed, and/or Defendant MODOC's employees were not adequately trained and supervised with respect to suicide prevention, medical management of detainees, identification of at-risk detainees, intake and personal property management, and detainee monitoring.

The district court concluded that Williams plausibly alleged a dangerous condition in the form of an inadequate or defective video monitoring system and an obstruction to the window into May's cell. This was in error. First, to the extent Williams's allegations are focused on the actual physical conditions as they existed at SECC at the time of May's suicide, Missouri courts have recognized that "a lack of warnings, barriers, or similar preventative measures do not constitute a dangerous condition under the statute." Boever v. Special Sch. Dist. of St. Louis Cnty., 296 S.W.3d 487, 493 (Mo. Ct. App. 2009). Williams's allegations are, in essence, that MODOC should have done more to prevent May's suicide and that a proper video monitoring system and an unobstructed view into May's cell would have accomplished this. But this falls outside the scope of the dangerous condition

-7-

exception because Williams asserts no more than that the facility lacked preventative measures.

Further, while Williams asserts that defective or inadequate video monitoring equipment and the obstructed window created a dangerous condition, she does so by coupling those physical conditions with allegations that the staff did not appropriately monitor at-risk detainees in their cells. Williams alleges that staff were not "adequately trained and supervised with respect to suicide prevention." And Missouri courts have recognized that the dangerous condition exception to sovereign immunity does not apply where the plaintiff's claim is rooted in a failure to supervise or train. See Maune ex rel. Maune v. City of Rolla, 203 S.W.3d 802, 805 (Mo. Ct. App. 2006) ("[F]ailure to perform an intangible act, 'whether it be failure to supervise or *warn*' cannot constitute a dangerous condition of the property for purposes of waiving sovereign immunity." (citation omitted)). Williams alleges no more than the absence of preventative measures and a failure to supervise or train, neither of which support the application of the dangerous condition exception. Because Williams fails to plausibly allege a dangerous condition existed at the time of May's suicide, we need not consider MODOC's arguments regarding the other elements of the dangerous condition exception. Accordingly, the district court erred in denying MODOC sovereign immunity.

### III.

Next, Loflin, Yount, and Noisworthy argue that the district court erroneously denied them qualified immunity on the deliberate indifference count. They assert that Williams failed to allege a constitutional violation because the complaint is devoid of any allegations that they had actual knowledge that May was a suicide risk and thus they could not have disregarded a known risk to May's health. Further, they assert that Williams failed to plausibly allege a violation of a clearly established right because the clearly established right is one to be protected from the known risks of suicide, and Loflin, Yount, and Noisworthy were not alleged to have actual knowledge of May's risk. "We review *de novo* the denial of a motion to dismiss

-8-

based on qualified immunity.  Because the appeal arises from a ruling on a motion to dismiss, we accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiffs." T.S.H. v. Green, 996 F.3d 915, 918 (8th Cir. 2021).  "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017) (alteration in original) (citation omitted).

"In considering a claim of qualified immunity, we apply the familiar two-prong framework, first considering 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right,' and second, 'whether the right was clearly established at the time of the alleged infraction.'" Cent. Specialties, Inc. v. Large, 18 F.4th 989, 996 (8th Cir. 2021) (citation omitted).  "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" Nord v. Walsh Cnty., 757 F.3d 734, 738-39 (8th Cir. 2014) (citation omitted).  "Prisoners have a 'clearly established constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to.'  The Eighth Amendment prohibits jail officials from acting with deliberate indifference towards risks of suicide." Whitney v. City of St. Louis, 887 F.3d 857, 860 (8th Cir. 2018) (alteration in original) (citation omitted).  A deliberate indifference claim involves both an objective and subjective component. Id. "To prevail on h[er] deliberate indifference claim, [Williams] must show that (1) [defendants] had actual knowledge that [May] had a substantial risk of suicide and (2) [defendants] failed to take reasonable measures to abate that risk." Id.

We agree that Williams has failed to plausibly allege deliberate indifference to May's known risk of suicide.  Williams offers only conclusory allegations that Loflin, Yount, and Noisworthy knew or should have known that May posed a suicide risk, falling far short of the actual knowledge standard.  In her complaint, Williams alleges that "Loflin, Yount, and Noisworthy knew, or possessed sufficient information from which to infer, and actually did or could have inferred that,

-9-

Decedent was a suicide risk in light of (among other things) the multitude of signs Decedent exhibited of being a suicidal offender, both, in the lead up to, and following Decedent's placement in administrative segregation." There are no further factual allegations supporting this conclusion; Williams makes no allegations that Loflin, Yount, or Noisworthy were aware of the facts known to the medical professionals treating May or that they had been notified that May was a suicide risk or had previously attempted suicide while in custody. Williams alleges that the knowledge of the healthcare-professional defendants, who evaluated and treated May, is imputed to Loflin, Yount, and Noisworthy. Without more, Williams's allegations are merely that these correctional officers should have known of May's suicide risk, which is insufficient to allege a constitutional violation. See Smith-Dandridge v. Geanolous, 97 F.4th 569, 576 (8th Cir. 2024) ("To establish that defendants had knowledge of the risk, 'it is not enough merely to find that a reasonable person would have known about the risk, or that the officer should have known.' Rather, if defendants were 'exposed to information concerning the risk and thus "must have known" about it,' a finding of deliberate indifference may be warranted." (citations omitted)).

Even considering the specific facts that Williams alleges were known to Loflin, Yount, and Noisworthy—that May faced disciplinary proceedings, that he was being put in administrative segregation, and that he was withdrawn and angry—they are insufficient to allege that May had a substantial risk of suicide, which would have necessitated intervention. See id. ("[A]n official's failure to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." (alterations in original) (citation omitted)). Because Williams fails to plausibly allege that Loflin, Yount, and Noisworthy had actual knowledge of May's suicide risk, she has failed to plausibly allege a constitutional violation. Loflin, Yount, and Noisworthy are thus entitled to qualified immunity and the district court erred in denying their motion to dismiss on this basis.

-10-

IV.

Finally, Loflin, Yount, and Noisworthy assert that the district court erred in concluding that they were not entitled to official immunity on the wrongful death claim.  Specifically, they argue that they were each engaging in discretionary acts as it related to monitoring inmates and that the district court erroneously concluded that it could not decide their entitlement to official immunity at the motion to dismiss stage.  "[W]hether Defendants are entitled to official immunity is a question of law we review *de novo*."  Letterman v. Does, 859 F.3d 1120, 1125 (8th Cir. 2017) (applying Missouri law).  In considering a motion to dismiss based on official immunity, we "accept[] all factual allegations as true and view[] them most favorably to the non-moving party."  Hall v. Woodruff, 121 F.4th 1155, 1157 (8th Cir. 2024).

"Under Missouri law, official immunity 'protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'"  Davis v. Buchanan Cnty., 11 F.4th 604, 629 (8th Cir. 2021) (citation omitted).  However, "[t]here is a 'narrow exception to the application of the official immunity doctrine—i.e., when a public officer fails to perform a *ministerial* duty required of him by law, he may be personally liable for the damages caused.'"  Id. (citation omitted).  A ministerial act is "merely clerical," and "compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials[,] . . . is 'to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed.'"  Id. (third alteration in original) (citation omitted).  "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity."  K.B. v. Waddle, 764 F.3d 821, 825 (8th Cir. 2014) (citation omitted).

-11-

Initially, the district court erroneously stated that, because this is a fact-specific inquiry, "determination of [whether an act is ministerial or discretionary] cannot be made at this stage in the proceedings." The Supreme Court of Missouri has specifically stated that "[t]o survive a motion to dismiss, a plaintiff must plead factual allegations affirmatively establishing an exception to official immunity." Forester v. May, 671 S.W.3d 383, 387 (Mo. 2023). And indeed, this Court has reversed a denial of a motion to dismiss based on official immunity under Missouri law because, based on the allegations in the complaint, the act was discretionary. Hall, 121 F.4th at 1158. Thus, the relevant inquiry here is whether Williams pled sufficiently plausible factual allegations that would render official immunity inapplicable, not whether further factual development would more definitively answer the inquiry, and the district court erred in denying official immunity on this basis.

On the merits, Williams has failed to sufficiently plead factual allegations establishing that the acts in question were ministerial. In her complaint, Williams alleges that Loflin and Yount failed to conduct checks on May in accordance with departmental policy and that Noisworthy failed to supervise these checks in accordance with departmental policy. Williams also specifically alleges that these duties were ministerial in nature. However, Williams's mere labeling of the duties as ministerial does not make them so. The departmental policies dictate that "irregular, periodic checks, with no fewer than 1 check in a 30 minute window, shall be made," which inherently encompasses some degree of discretion in how the policies are carried out. Either Loflin or Yount could perform the check and complete it through "verbal or visual" contact. See State ex rel. Love v. Cunningham, 689 S.W.3d 489, 496 (Mo. 2024) ("[D]uties are discretionary and not ministerial [when they] could have been completed in various ways by various people." (citation omitted)). The checks could also occur more frequently should a correctional officer wish. Indeed, this Court has recently reached the same conclusion in considering whether a similar correctional facility policy mandating periodic checks imposed a ministerial or discretionary duty for purposes of official immunity under Missouri law. Headley v. Centurion of Mo., LLC, 178 F.4th 429,

-12-

435 (8th Cir. 2026) ("The policy here gives the officer discretion in conducting the checks. While the policy has a general 'when' of 'three times per hour, or every 20 minutes,' it does not dictate one manner 'how' the officer must conduct the check, allowing discretion and variation." (citation omitted)).  As the Supreme Court of Missouri has stated "the central question is whether there is any room whatsoever for variation in when and how a particular task can be done.  If so, that task—by definition—is not ministerial."  State ex rel. Alsup v. Kanatzar, 588 S.W.3d 187, 191 (Mo. 2019).  Here, the policies provide room for variation in the checks, making these duties distinct from the rubber stamp duties that the Supreme Court of Missouri views as ministerial.  See State ex rel. Morales v. Alessi, 679 S.W.3d 467, 472 (Mo. 2023).  The district court thus erred in concluding that the required checks were ministerial tasks and that official immunity was inappropriate.

V.

For the foregoing reasons, we reverse and remand to the district court for further proceedings consistent with this opinion.

KELLY, Circuit Judge, dissenting as to Parts II and III, and concurring in the judgment as to Part IV.

The district court found that Williams satisfied the minimum pleading standards to overcome a motion to dismiss based on sovereign immunity (Counts I and II) and qualified immunity (Count IV). I agree.

Although "we need not accept 'threadbare recitals of the elements' as true," we have held that a claim survives a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Tholen v. Assist Am., Inc., 970 F.3d 979, 982–83 (8th Cir. 2020) (quoting McDonough v. Anoka Cty., 799 F.3d 931, 945 (8th Cir. 2015)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words,

-13-

the complaint need only allege facts sufficient to make the claims plausible. Iqbal, 556 U.S. at 678–79 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Here, Williams plausibly alleged an exception to sovereign immunity, claiming that: (1) the prison maintained a defective video monitoring system and allowed an obstruction that covered May's cell window, which were dangerous conditions, (2) May's death resulted from these conditions, (3) the conditions created a reasonably foreseeable risk of an inmate's death or injury inside their cell, and (4) MODOC should have known of both conditions, given that employees were expected to make regular checks of the cells. These allegations satisfy each element of the dangerous condition exception. See Hensley v. Jackson County, 227 S.W.3d 491, 496 (Mo. 2007). Whether the physical defect alleged amounts to a dangerous condition as understood by Missouri courts is a question that is better answered after factual development that would come with discovery. In my view, and at this stage of the proceedings, Williams has sufficiently pleaded wrongful death counts against MODOC (Counts I and II) under Missouri law.

I would also affirm the district court's finding that Williams plausibly alleged the officers had actual knowledge of May's risk of suicide and deliberately disregarded it (Count IV). The complaint alleges the contents of the MODOC policies and procedures that address the risk of "offender suicide." And it alleges the corrections officers were subject to those policies and procedures. A reasonable inference is that these officers understood the policies and procedures, which included "signs of potentially suicidal offenders" that "staff members shall be alert for." One "sign" was an offender who received information related to "institutional proceedings." Thus, it is plausible the officers knew that May—who was in administrative segregation pending a disciplinary hearing at the time of his death— was at a greater risk of suicide. Given the officers failed to conduct even the minimal required checks despite that risk, the allegations are sufficient to defeat qualified immunity at this motion-to-dismiss stage. See Iqbal, 556 U.S. at 678–79.

-14-

As to the wrongful death claim against the officers (Count VI), Williams alleged that jail policy required officers to "make irregular, but periodic checks, with no fewer than 1 check in a 30 minute window." The checks may be accomplished by "a visual or verbal contact," but the discretionary "how"—visual or verbal—does nothing to diminish the mandatory "when." But I agree that our recent decision in Headley v. Centurion of Mo., LLC, 178 F.4th 429, 435 (8th Cir. 2026) forecloses this theory and, thus, this claim.

_____

-15-